Owen, C. J.
1. It is contended by the plaintiff in error that upon the record of the court as it existed at the time he was put upon his trial at the September term, 1886, he was entitled to his discharge, and that it was not in the power of the court'to abridge or take away that right by so amending the record as to make it appear that the jury, at the former trial, was discharged upon sufficient ground. It is well established that the discharge of a jury in a criminal case without the consent of the defendant, after it has been duly impaneled and sworn, but before verdict, is -equivalent to a verdict of acquittal, unless the discharge was ordered in consequence of such necessity as the law regards as imperative, and that in such case the record must show the existence of the necessity which required such discharge, otherwise the defendant will be exonerated from the liability of further answering'to the indictment. Hines v. The State, 24 Ohio St. 134.
Section '7313, Revised Statutes, as amended 78 Ohio L. 89, provides that “ the court may discharge a jury, Avithout prejudice to the prosecution, for the sickness of a juror, the corrup *684 tion of a juror, or other accident or calamity, or because there is no probability of the jurors agreeing, and the reason for the discharge shall be entered on the journal.” It is maintained by the plaintiff in error that the discharge of the jury at the January term of the court without the consent of the defendant, and without entering upon the journal some lawful ground for the discharge, was equivalent to an acquittal, and that the court was without jurisdiction to make the nuno pro tune order. Ludlow v. Johnston, 3 Ohio, 575, is cited in support of this proposition. The two propositions upon which that case proceeded are: 1. “An order of court, authorizing an executor or administrator to sell decedent’s lands, made when the power of the court had ceased, can not be made valid by entering it nune pro tune as of a preceding term.” 2. “An order nune pro tunc can not be founded upon mere parol proof of what was ordered to bo done at a previous term, where there is no written minute to sustain it.”
In that case the jurisdiction of the court over the subject-matter of the order made at the prior term had been taken away by legislation, and the evidence relied upon to sustain the order nune pro tune was exclusively parol. Without discussing the soundness of the propositions above quoted, it is enough to say that the facts of the case at bar fail to bring it within either of them. To sustain the assumption of counsel that the court was without jurisdiction to make the order nune pro tune it is necessary to assume (1) that the jury was discharged, at the former term, without sufficient cause, or (2) that if it was not there was no power in the court to make tho order showing that the discharge was upon sufficient ground.
The first assumption is unwarranted and against the real facts, while the second is an assumption of the soundness of tho very proposition in controversy — that the court was without power to make its records show what had been done by it at a former term, but by inadvertence omitted from the journal. The principle is fundamental that every court has a right to judge of its own records and minutes; and if it appear satisfactorily to it that an order ivas actually made at a former term and omitted to be entered by the clerk, it may at any *685 time direct such order to be entered upon the records, as of the term when it was made. State v. McAlpin, 4 Iredell Law, 140; Ludlow v. Johnston, supra, 575; Bothe v. Railway Co., 37 Ohio St. 149; In re Estate of Jarrett, 42 Ohio St. 194; Elliott v. Plattor, 43 Ohio St. 205; Burnett v. The State, 14 Tex. 455; Freeman Judgments, secs. 56 to 68. This power may be exercised in criminal prosecutions as well as in civil cases. Exp. Beard, 41 Tex. 234; Smith v. State, 1 Tex. App. 408; Exp. Jones, 61 Ala. 399. In the case last cited the supreme court sustained an order nune pro tunc of the trial court made at a term subsequent to the trial, showing the number of days hard labor to which the defandant was sentenced, which had been left blank at the trial term. Nor are we able to find any adjudicated cases in which the time for the exercise of this power has been limited. In Massachusetts the record of a judgment was completed, by a nunc pro tune order, after the lapse of twenty years. Rugg v. Parker, 7 Gray, 172. Freeman Judgment, sec. 56. That the evidence upon which the court acted was ample to authorize the order, if there was power to make it, will not be seriously questioned. Metcalf v. Metcalf, 19 Ala. 319; Hegeler v. Henckell, 27 Cal. 491; Freeman Judgments, sec. 61.
In the case at bar the jury was in fact discharged for the reason that there was no probability of the jurors agreeing. This was one of the grounds which authorized' a discharge of a jury in a criminal- case without prejudice to future prosecution upon the same indictment. The fact and reason of the action of the court were duly entered upon the court docket, and all that the court could do wa_g done. Judicial action ivas taken, but there was failure so to make up the journal as to show such action. There was no time.during that term of the court when the prisoner could have availed himself of the discharge of the jury. There was no legal objection to the impaneling of another jury for his trial at the same term. Had this been done he surely could not have urged that he had been virtually acquitted by the discharge of a former jury, without his consent and upon unauthorized grounds; for he certainly could not have resisted, with any show of serious *686 ness, the completion of the record entry of the action of the court at any time during the term. This serves to illustrate that in fact there was nothing in the proceedings of the court which, in legal effect, worked his discharge. Let it be supposed that at that January term the prisoner had been tried and acquitted, and the cleric had failed to enter upon the journal the fact that a jury had been impaneled, a trial had, and .the prisoner acquitted. Would it be claimed, in case of his being put upon his trial at a subsequent term, that there was no power in the court to direct that a nunc pro tuna order be made.to show what action had been in fact taken by the court and jury ? As no rights of third parties could have intervened in either case, it is not easy to see how the two cases can be distinguished. In either case the question resolves itself into one of the power of the court to make its records speak the truth and cause that to appear upon the journal which in fact had transpired in the course of judicial proceedings at a'former term. It is maintained, however, that the case of Markward v. Doriat, 21 Ohio St. 637, is decisive of the case at bar. In that case the defeated party gave notice of his demand of a second trial, which the court minuted upon the court docket. It was not carried into the journal. It was held that the omission to journalize the notice could not be supplied by an order made at a subsequent term. The statute provided (S. & C. 1155, sec. 11) that the party desiring a second trial should, “ at the term of the court at which judgment was rendered, enter on the records of the court notice of his demand for such second trial.” The court simply say in the opinion: “ The plaintiff did not, ‘ at the term of the court at which judgment was rendered, enter on the records of the court notice of his demand for such second tidal ’ as provided by statute. The proceedings at the subsequent term to supply this omission could not have that effect. It was too late.”
It is clear that by plain provision of the statute it was an indispensable prerequisite to the right to a second trial that the party demanding it should enter on the records of the court notice of his demand at the trial term. The party was required to see to it that the entry was made. True, in the *687 case at bar, the statute required that in case of the discharge of the jury before a verdict, “ the reason for the discharge shall be entered on the journal.” This can mean no more than that the record shall plainly exhibit the true ground upon which the discharge of the jury is ordered. The requirement that the entry shall be made at the term at which the order is made is no more • emphatic than the general requirement that all orders of court not otherwise regulated by statute shall be made to appear of record at the time, or at least at the term at which they are made. It will not be denied that it is of importance, and within the contemplation of the law, that all the proceedings of a court shall be promptly recorded. It is to provide against the contingencies of omission to do this either by accident, inadvertence, or other cause, that the power to supply such omission by orders made nunc pro tunchas been recognized from a very early day. The distinction between the statutory requirement in the case of demand for second trial and that concerning the discharge of a jury is too apparent to call upon us to give the case last cited controlling-effect in the present case. The views we have here expressed lead us to the conclusion that the action of the court below in supplying the omission to enter upon the journal of the court the reasons for the discharge of the jury by a nunc pro tunc order, and in refusing the application of the prisoner to be discharged from further prosecution, was authorized.
2. That there was no error in rejecting the letters offered in evidence is apparent from what appears in the statement of facts upon this branch of the case.
3. The statements of Maggie Rathburn, which the defense offered to prove were made to the prisoner and to Miss Benedict, are claimed to have been admissible upon the principle that wherever the bodily or mental feelings of an individual are material to be proved the usual expressions of such feelings, made at the time in question, are original evidence. A thoughtful consideration of the proposed testimony will make it quite apparent that the statements offered relate rather to the opinion .of Miss Rathburn concerning her condition than *688 to an expression of any particular bodily feeling or sensation. There was no error in excluding them.
4. The action of the court below in permitting the witness, Petty, to testify to the admissions of the prisoner concerning the offense with which he stood charged presents a question of much difficulty.
It may be conceded that the most commonly accepted wiew of the profession is that the privilege which was asserted in the trial below is confined to communications made to an attorney who has authority to practice his profession in courts of record.
It is equally true that there is a growing tendency in the courts to extend the rule of privilege to cases which, though not within the letter, are within the manifest spirit of the rule as it is generally understood. Counsel have assumed that the rule which our civil code prescribes applies as well in criminal proceedings. This has been determined differently by this court in Steen v. The State, 20 Ohio St. 333, and in Schultz v. The State, 32 Ohio St. 280, where it is held that the rules of evidence contained in the code of civil procedure apply only to civil actions and proceedings. This calls upon us to look to the common law and to the reason and logic of the question to determine the rules which are to prevail in the trial of criminal causes. It appears by the bill of exceptions’in this case that Petty had for many years followed the business of practicing law before justices of the peace, but had not been admitted to the bar. It was in his capacity as such attorney that the prisoner sought his 'aid and advice. The admissions made to the witness were so made in reply to the latter’s question as to what the facts were. So far as the record discloses the witness was entirely reputable in his community, and was deemed thoroughly trustworthy. This must be presumed in his favor. He had for many years practiced law in justices’ courts as a regular employment. It was very natural that the prisoner, charged with a grave offense, should seek his aid and counsel. It was, too, most natural, that the prisoner, in answer to his adviser’s question, should freely confide to him the secrets which he would repose in no one who did *689 not sustain toward him the relation of legal adviser. The record discloses that the prisoner was not seeking, simply, the solace of some confidential friend in whom he might confide in the hour of his extremity. On the contrary, it Avas the counsel of some one of superior legal learning and experience he Avas seeking, and it Avas for the purpose of putting his 'legal adviser in possession of the facts AA'hich Avould enable him to give intelligent and valuable legal counsel that the confidence was reposed. Indeed, there was present every element which Avould invoke the application of the general rule upon this subject except the mere form of the admission of the adviser to practice in courts of record. Every consideration of reason, justice, logic, and fair-play would seem to demand that the mere artificial distinction which the state calls upon us to enforce should be made to yield to the modern tendency to apply the reason and spirit of the rule instead of adhering rigidly and sullenly to its letter. The privilege has been held to include scriveners and conveyancers as well as general counsel. 1 Wharton’s Ev., sec. 581; Knight v. Turquand, 2 M. & W. 100; Carpmael v. Powis, 1 Phil. (Eng. Ch.) 687.
In People v. Barker, 59 Mich., s. c., 27 N. W. Rep. 546, it was held that, “ confidential communications made in reliance upon the supposed relation of attorney and client, whether the party assupaing to act as such is an attorney or not, are excluded upon the plainest principles of justice.”
While we find much conflict in the authorities upon this •question, Ave have no disposition to attempt to harmonize them, but prefer to place our solution of it, as applied to this case, upon the vieAvs already expressed, and hold that the witness, Petty, should not have been permitted to testify to the admissions made to him by the prisoner.
We are not called upon to declare the comprehensive rule that all statements made to persons who practice in justices’ courts, during the course of consultation upon legal controversies, are privileged. We simply declare that the peculiar facts of this case called upon the court, below to reject the tesimony of the Avitness, Petty, and in admitting it there was error, for which the

Judgment below is reversed.